BARFIELD, J.
This appeal requires us to review a finding that section 943.325, Florida Statutes,[1] is constitutional as applied to appellant. We affirm.
This juvenile appellant pled nolo conten-dere to a burglary charge, in exchange for which the state agreed to drop the other charge. Adjudication was withheld, and she was placed on community control. The state then requested, pursuant to sec *1006 tion 943.325, that she be compelled to give a blood «ampie for the purpose of DNA testing. Defense counsel objected and filed a motion to declare section 943.325 unconstitutional as applied to the offense of burglary, asserting that it violated “the Constitutional guarantees of the United States under the Fourth, Fifth and Eighth Amendments as incorporated into the Fourteenth Amendment, due process, and equal protection and Article I, Section 10 (ex post facto laws),” and that it also violated “the Florida Constitution under Article 1, Section 2, Basic Rights, Section 9, Due Process, Section 10, Prohibited Laws (ex post facto), Section 12, Searches and Seizures, Section 17, Excessive Punishments, Section 23, Right of Privacy, and Article 3, Section 6, Single Subject Rule.” The mem-oranda of law filed by the parties were limited to the search and seizure, equal protection, and right to privacy issues.
Observing the strong presumption in favor of the constitutionality of statutes, and the fact that both sides agreed that an unwanted intrusion into the body is a search and seizure within the parameters of the Fourth Amendment, the trial judge phrased the question as “whether the search and seizure is unreasonable.” The judge found that the intrusion required by DNA blood draws “is a reasonable one in light of the legislature’s objectives” of preventing and solving future violent offenses. The judge further found that “the juvenile defendant has a diminished expectation of privacy” and that “state and federal courts around the nation have consistently held that felons, upon conviction, hold only a reduced expectation of privacy, and that the State’s goals of preventing further crime and accurately identifying perpetrators is a legitimate one.”[2] The judge also noted that some courts have found that “statutes requiring DNA blood draws from those convicted of burglary and the data banking of those results do not violate the Fourth Amendment, because the requirements fulfill a ‘special need beyond law enforcement’ ” and that “the public’s interest outweighs the minimal intrusion into the felon’s privacy expectations.”[3]
As for the “overbroad” and equal protection challenges, the judge found that appellant “has not established that the legislature has targeted a suspect class in the change to Section 943.325” and that it appears “that the legislature has added burglary to the list of offenses for which one must give a DNA sample because of the number of persons who commit burglary and then go on to commit more violent crimes.” The judge found that there was “a rational basis for the legislature’s addition of burglary to 943.325” and that “the juvenile’s expectation of equal protection under the Constitution has not been disappointed.” [4].
Finally, as to the claim that the DNA statute violates the state constitution’s right to privacy protections, the judge found that appellant “has failed to establish that the requirement of the blood specimen infringes on a fundamental right” and ruled..that the state’s “showing that *1007 the requirement is rationally related to a legitimate state interest, as discussed above, renders the statute constitutional.”
The parties agree that this is a case of first impression in Florida. The courts of other jurisdictions have uniformly upheld the constitutionality of similar DNA data base statutes. Of the varied approaches to the federal search and seizure issue, we find most compelling the traditional “minimally intrusive search” approach used in Jones v. Murray, 962 F.2d 302 (4th Cir.), cert. denied, 506 U.S. 977, 113 S.Ct. 472, 121 L.Ed.2d 378 (1992), in the concurring opinion in State v. Olivas, 122 Wash.2d 73, 856 P.2d 1076 (1993), and in other cases.[5] In Landry v. Attorney General, 429 Mass. 336, 709 N.E.2d 1085 (1999), cert. denied, Landry v. Reilly, 528 U.S. 1073, 120 S.Ct. 785, 145 L.Ed.2d 663 (2000), the court summarized the two approaches to the federal search and seizure issue, and adopted the approach taken in Jones. The Landry opinion also includes an analysis under the Massachusetts state constitution’s search and seizure provision,[6] likening the matter to the constitutionality of drunk driving roadblocks based upon a weighing of “the lower expectation of privacy traditionally accorded to the motoring public” against the “strong State interest in eliminating ‘[t]he carnage caused by drunk drivers,’” and finding that “[t]he minor intrusion of a blood test is outweighed by the strong State interest in preserving a positive recorded identification of convicted persons.” Id. at 1093-94.
The equal protection issue has been addressed by courts in other jurisdictions,[7] in each of which the court has applied the “rational basis” test and has found the DNA statute at issue constitutional. In Gaines v. State, 998 P.2d 166 (Nev.2000), cert. denied, Gaines v. Nevada, 531 U.S. 856, 121 S.Ct. 138, 148 L.Ed.2d 90 *1008 (2000), the court specifically rejected the argument that it should apply a “strict scrutiny” test because the Nevada DNA statute implicated the defendant’s fundamental right to privacy, finding that “a convicted person has no fundamental right to be free from DNA genetic marker testing.”
While there are no cases construing the Florida Constitution’s right to privacy provision in this context, the court in Fosman v. State, 664 So.2d 1163 (Fla. 4th DCA 1995), rejected an inmate’s claim that a statute requiring him to submit a blood sample for HIV analysis violated his right to privacy under the Florida Constitution. Applying Winfield v. Division of Pari-Mutuel Wagering, Dept. of Business Regulation, 477 So.2d 544 (Fla.1985), the court found that the inmate, who had been charged with armed sexual battery, had no reasonable expectation of privacy in regard to the HIV blood test, but that even if he had a reasonable expectation of privacy, “society’s interest in preventing members of the public from being exposed to HIV would be a sufficient compelling state interest to justify the infringement of that right.” We find that a “convicted” person, as defined in section 943.325, has no reasonable expectation of privacy with respect to the taking of a blood sample for DNA testing that outweighs the state’s interests in identifying convicted felons in a manner that cannot be circumvented, in apprehending criminals, in preventing recidivism, and in absolving innocent persons charged with crimes.
In circumstances like the one at issue, involving search and seizure issues, the Florida Constitution’s right of privacy pro-vision, Article I, section 23, does not modify the applicability of Article I, section 12, so as to provide more protection than that provided under the Fourth Amendment, “particularly since the people adopted section 23 prior to the present section 12.” State v. Hume, 512 So.2d 185, 188 (Fla.1987).[8] As our sister court has noted in Madsen v. State, 502 So.2d 948 (Fla. 4th DCA 1987), approved, 521 So.2d 110 (Fla.1988), and State v. Dean, 639 So.2d 1009 (Fla. 4th DCA 1994), to construe Florida’s right of privacy provision in the manner proposed by appellant, where there is no violation of the Fourth Amendment or of Article I, section 12, of the Florida Constitution, would effectively nullify the constitutional amendment to section 12, which is not within the judicial prerogative.
The order is AFFIRMED.
MINER and POLSTON, JJ„ concur.

. Section 943.325(1), Florida Statutes, requires "any person” (including juveniles and adults) convicted of an enumerated offense (including sexual battery, lewd and lascivious offenses, homicide, aggravated battery, carjacking, homeinvasion robbery, and burglary) who is incarcerated or under court-ordered supervision to submit blood samples for DNA analysis. Section 943.325(10)(d) defines "conviction” for the purposes of the statute to include "a finding of guilty, or entiy of a plea of nolo contendere or guilty, regardless of adjudication or, in the case of a juvenile, the finding of delinquency.”

. The trial judge cited the following cases: Landry v. Attorney General, 429 Mass. 336, 709 N.E.2d 1085 (1999), cert. denied, Landry v. Reilly, 528 U.S. 1073, 120 S.Ct. 785, 145 L.Ed.2d 663 (2000); Cooper v. Gammon, 943 S.W.2d 699 (Mo.Ct.App.1997); Gaines v. State, 998 P.2d 166 (Nev.2000), cert. denied, Gaines v. Nevada, 531 U.S. 856, 121 S.Ct. 138, 148 L.Ed.2d 90 (2000); Doles v. State, 994 P.2d 315 (Wyo.1999).

. The judge cited the following cases: Roe v. Marcotte, 193 F.3d 72 (2d Cir.1999); Shelton v. Gudmanson, 934 F.Supp. 1048 (W.D.Wis.1996); Dial v. Vaughn, 733 A.2d 1 (Pa. Commw.Ct.1999).

. The judge cited Gaines v. State, 998 P.2d 166 (Nev.2000), cert. denied, Gaines v. Nevada, 531 U.S. 856, 121 S.Ct. 138, 148 L.Ed.2d 90 (2000).

. See id. See also Boling v. Romer, 101 F.3d 1336 (10th Cir.1996); Rise v. State of Oregon, 59 F.3d 1556 (9th Cir.1995), cert. denied, 517 U.S. 1160, 116 S.Ct 1554, 134 L.Ed.2d 656 (1996); Matter of Appeal in Maricopa County Juvenile Action Numbers JV-512600 and JV-512797, 187 Ariz. 419, 930 P.2d 496 (Ct.App.1996) (involving juveniles); People v. Wealer, 264 Ill.App.3d 6, 201 Ill.Dec. 697, 636 N.E.2d 1129, appeal denied, 157 Ill.2d 519, 205 Ill.Dec. 182, 642 N.E.2d 1299 (1994); In re Nicholson, 132 Ohio App.3d 303, 724 N.E.2d 1217, dismissed, 86 Ohio St.3d 1403, 711 N.E.2d 231 (1999) (involving a juvenile); State ex rel. Juvenile Dept. of Multnomah County v. Orozco, 129 Or.App. 148, 878 P.2d 432 (1994), review denied, 326 Or. 58, 944 P.2d 947 (1997) (involving a juvenile); Doles v. State, 994 P.2d 315 (Wyo.1999).

. Several opinions have cited State v. Gun-wall, 106 Wash.2d 54, 720 P.2d 808 (1986), in which the Washington Supreme Court set out six nonexclusive criteria it considered relevant to a determination of whether the state constitution should be considered to extend broader rights than the U.S. Constitution, and noted that "[i]n a recent opinion, we declined to discuss state constitutional grounds because they had not been thoroughly briefed and discussed, stating that ‘naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.’ ” We do not gather from appellant's briefs that she is asserting the Florida Constitution’s provisions concerning search and seizure or equal protection provide more protection than the Fourth and Fourteenth Amendments to the U.S. Constitution. Article I, section 12, of the Florida Constitution, relating to search and seizure, provides that the right “shall be construed in conformity with the 4th Amendment to the United States Constitution.” Article I, section 2, of the Florida Constitution, relating to basic rights, including equal protection, is silent on the matter.

.See Roe v. Marcotte, 193 F.3d 72 (2d Cir.1999); Boling v. Romer, 101 F.3d 1336 (10th Cir.1996); Vanderlinden v. State of Kansas, 874 F.Supp. 1210 (D.Kan.1995), affirmed, Schlicher v. (NFN) Peters, I & I, 103 F.3d 940 (10th Cir.1996); Gilbert v. Peters, 1994 WL 369643 (N.D.Ill.1994), affirmed, 55 F.3d 237 (7th Cir.1995); Gaines v. State, 998 P.2d 166 (Nev.2000), cert. denied, Gaines v. Nevada, 531 *1008 U.S. 856, 121 S.Ct. 138, 148 L.Ed.2d 90 (2000); State v. Olivas, 122 Wash.2d 73, 856 P.2d 1076 (1993).

. In State v. Jimeno, 588 So.2d 233 (Fla.1991), after the United States Supreme Court had found that a vehicle search did not violate the Fourth Amendment, the Florida Supreme Court on remand rejected a claim that the search nevertheless violated the defendant’s right to privacy under the state constitution.